989 F.2d 502
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jerry RUSSELL, Plaintiff/Appellant,
v.
David G. SANDAHL, et al., Defendants/Appellees.
 No. 92-1367.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 2, 1993.*
Decided March 11, 1993.
 
 Before POSNER and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Jerry Russell claims that various prison officials violated his Eighth and Fourteenth Amendment rights. After reviewing Russell's allegations, the district court dismissed his case for failure to state a claim upon which relief could be granted. Fed.R.Civ.P. 12(b)(6). We affirm.
 
 I. BACKGROUND
 
 2
 The procedural posture of this case requires us to accept as true the allegations contained in Russell's complaint, amended complaint[1], and attached exhibits. Leahy v. Board of Trustees of Community College District No. 508, 912 F.2d 917, 921 (7th Cir.1990). Russell's complaints allege that he was using the restroom in the prison library when Officer Mike Williams accused him of smoking. Williams then approached Russell in a threatening manner, called him a racially offensive name, and asked him to leave the library. As Russell left, Williams asked for identification. After Russell refused, Williams wrote a disciplinary report charging Russell with Insolence and Intimidation.
 
 
 3
 A short time later, Russell filed a grievance claiming that Williams had used racially offensive language[2]. Along with his grievance, Russell submitted a list of potential witnesses. The investigating officer, Jerry Suits, interviewed each of these witnesses, but none of them supported Russell's story. Suits then asked Russell to take a polygraph. Russell agreed, provided that his attorney attended or received the questions before the test. A month later, Suits called Russell into his office and asked him to take the polygraph without his attorney present. Russell refused. Suits then placed Russell in solitary confinement and charged him with "giving false information to an employee."
 
 
 4
 Four days later, Russell appeared before the Adjustment Committee on both the Insolence and the False Information charges. Russell attempted to call witnesses and introduce affidavits at the hearing, but the Adjustment Committee rejected them, informing Russell that it had already questioned his witnesses. The Committee then found Russell guilty of the charges and imposed disciplinary sanctions.
 
 
 5
 Russell later asked Warden David Sandahl to review the Committee's decision. After Sandahl approved the sanctions, Russell filed an emergency grievance on October 11, 1992. By February 11, 1991, Russell had not heard back from Warden Sandahl.
 
 
 6
 After reviewing these allegations, both a magistrate judge and the district court believed that Russell had not stated a claim upon which relief could be granted. The district court dismissed the complaint under Fed.R.Civ.P. 12(b)(6), and Russell appeals.
 
 II. ANALYSIS
 
 7
 Russell's appellate brief illustrates what we have previously called the "shotgun" approach to litigation. United States v. Levy, 741 F.2d 915, 924 (7th Cir.), cert. denied, 469 U.S. 1021 (1984). In an attempt to find some basis of district court error, Russell raises scores of issues, most of these in a cursory, unsupported manner.
 
 
 8
 Although we must construe Russell's pro se brief liberally, Haines v. Kerner, 404 U.S. 519 (1972), we must also follow the rules of waiver and construction that apply to all appellate cases. When ruling on a motion to dismiss, we consider only the issues raised in his complaints and attached exhibits. Doe v. First Nat'l Bank of Chicago, 865 F.2d 864, 873 (7th Cir.1989). We will not rule on issues raised for the first time in Russell's appellate brief or in his brief opposing the motion to dismiss[3]. We may also disregard claims against unspecified individuals and against non-parties. We need only consider whether the complaints' well-pleaded allegations, together with all reasonable inferences that may be drawn from those allegations, state a claim against any of the defendants. Bowman v. City of Franklin, 980 F.2d 1104, 1107 (7th Cir.1992). Our review over this question is de novo. Bethlehem Steel Crop. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990).
 
 A. Officer Williams
 
 9
 We interpret Russell's complaint to raise three claims against Officer Williams: (1) that Williams violated Russell's right of access to the courts by evicting him from the library on August 21, 1990, (2) that Williams violated the Eighth and Fourteenth Amendments by using racially offensive language, and (3) that Williams filed a false disciplinary report against Russell.
 
 
 10
 In an access to the courts case, a prisoner must allege either that the prison substantially limited his access to legal materials or that he suffered some prejudice. Jenkins v. Lane, 977 F.2d 266 (7th Cir.1992). Russell's claim fails under this standard because he was denied library privileges for only one day and because he has alleged no detriment stemming from the denial.
 
 
 11
 Russell's allegation of racial taunts also fails to state a claim. Although the use of racial slurs is reprehensible, it does not violate the Eighth Amendment and only violates the Fourteenth Amendment if coupled with physical force or other egregious conduct. See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987); Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir.1985); Veal v. Dillon, 1988 U.S.Dist. LEXIS 2072 (N.D.Ill.1988). Because Russell's complaint and amended complaint allege despicable language without any physical contact, he is not entitled to relief.
 
 
 12
 Russell's allegation that Williams filed a false disciplinary report also fails. The sole protection against such erroneous charges are the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539 (1974). See Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984). This court may only consider whether Russell received an opportunity to refute Williams' complaint; it may not make an independent determination about the propriety of the charges. Id.
 
 B. The Adjustment Committee
 
 13
 We thus turn to the Due Process allegations arising from Russell's disciplinary hearing. Due Process requires that a prisoner receive: (1) advance written notice of the alleged violation; (2) the opportunity to be heard by an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with time limitations and institutional safety); and (4) a written decision by the fact-finder. Wolff, 418 U.S. at 563-67. The Board must also rest its decision on sufficient evidence.
 
 
 14
 Although Russell discusses most of these rights in his appellate brief, his complaint and amended complaint only discuss his right to call witnesses and the sufficiency of the evidence.
 
 
 15
 The right to present evidence at a disciplinary hearing is a limited right. It is "necessarily circumscribed by the penological need to provide swift discipline in individual cases." Ponte v. Real, 471 U.S. 491, 495 (1985). As the Supreme Court stated in Wolff, 418 U.S. at 566:
 
 
 16
 Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the [Adjustment Committee] to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.
 
 
 17
 Although Russell's complaints never discuss the Committee's reasons for rejecting his evidence or even specify what evidence the Committee rejected, the exhibits attached to the complaints provide more guidance. We may construe these documents as part of the complaint because "a copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes." Fed.R.Civ.P. 10(c); In Re Wade, 969 F.2d 241, 250 (7th Cir.1992). From the exhibits, we may infer that the Adjustment Committee rejected oral testimony from Russell's witnesses and that it refused an affidavit from Joe Parker. However, the exhibits also show that the Committee rejected Russell's evidence because it found it unnecessary and duplicative. The Adjustment Committee Summary shows that Russell submitted the names of potential witnesses before his hearing, and that the prison interviewed all of these witnesses, including Joe Parker. At the hearing, the Committee denied Russell's request to present further evidence from the witnesses because it had already questioned them.
 
 
 18
 The Committee's reasons comply with Wolff, which allows disciplinary boards to reject unnecessary evidence. See also Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir.1989) (prisoner may be denied the right to present cumulative evidence). Because the record provides a valid reason for rejecting the evidence, we need not further inquire into the Committee's motives. Ponte, 471 U.S. at 499.
 
 
 19
 Russell also challenges the sufficiency of the prison's evidence. To assess this claim, we need only determine whether any evidence in the record supports the decision reached by the Committee. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). We need not examine the entire record or reweigh all the evidence. Id.
 
 
 20
 The documents attached to Russell's complaint, which we construe as part of that complaint, show some evidence supporting the Adjustment Committee's decision. Officer Williams disciplinary report supports the Committee's finding of Insolence and Intimidation. Interviews with Officer Williams and the prison inmates support the False Information charge.
 
 C. Lieutenant Suits
 
 21
 Russell argues that Lieutenant Suits placed him in solitary confinement because he refused to take a polygraph test. This claim is contradicted by Russell's own exhibits. Although Russell's complaint alleges that he was put in segregation for disobeying a direct order, in an earlier letter to Warden Sandahl, Russell admits that he was put in segregation pending his hearing on the False Information charge. (see Exhibit E). Suits' disciplinary report also indicates that Russell was segregated because of his pending hearing.
 
 
 22
 The decision to place Russell in segregation pending his disciplinary hearing raises no Due Process issue. Neither federal nor Illinois law has created a liberty interest in remaining in the general population before a hearing. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Woods v. Thieret, 903 F.2d 1080, 1081 (7th Cir.1990).
 
 D. Warden Sandahl
 
 23
 Finally, Russell claims that Warden Sandahl violated his Due Process rights by delaying action on his grievance. This claim fails because a prisoner has no constitutional entitlement to grievance procedures. Wolff and its progeny, which have clearly enumerated the requirements for disciplinary proceedings, have never included the right to appeal or file a grievance after a proceeding. See also Azeez v. De Robertis, 568 F.Supp. 8, 10 (N.D.Ill.1982) (Illinois grievance procedures do not confer any due process rights).
 
 
 24
 Finding no error in the district court's dismissal, we AFFIRM.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 On June 12, 1991, Russell filed a document explaining the claims raised in his initial complaint. We consider this document an amended complaint. Fed.R.Civ.P. 15(a)
 
 
 [2]
 Russell also filed an earlier grievance complaining about Williams' taunts
 
 
 [3]
 Although we are limited to considering the claims that the plaintiff raises in his complaint, we may consider facts mentioned in subsequent briefs. Early v. Bankers Life and Casualty Co., 959 F.2d 75, 79 (7th Cir.1992); Orthmann v. Apple River Campground, Inc., 757 F.2d 909, 915 (7th Cir.1985)