980 F.2d 1104
 24 Fed.R.Serv.3d 394, 23 Envtl. L. Rep. 20,444
 Loretta BOWMAN, William H. Bowman, William H. Bowman, Jr.,
et al., Plaintiffs-Appellants,
v.
CITY OF FRANKLIN, J.C. Zimmerman Engineering Corporation,
Waste Management of Wisconsin, Incorporated, et
al., Defendants-Appellees.
 No. 91-3887.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 20, 1992.
Decided Dec. 2, 1992.
Rehearing Denied Jan. 4, 1993.
 
 Steve Enich, Charles H. Johnson, Milwaukee, Wis., for plaintiffs-appellants.
 Jesse A. Wesolowski (argued), Franklin, Wis., for City of Franklin.
 James L. Kirschnik, Patrick R. Burns, Machulak & Hutchinson, Brookfield, Wis., for J.C. Zimmerman Engineering.
 Cordelia S. Munroe (argued), David S. Branch, Friebert, Finerty & St. John, Milwaukee, Wis., for Waste Management of Wisconsin Inc., and Waste Management of North America, Inc.
 Before BAUER, Chief Judge, POSNER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 The Bowmans, Plaintiffs-Appellants, brought this action under 42 U.S.C. §§ 1983 and 1985 against the City of Franklin ("Franklin"), J.C. Zimmerman Engineering Corp. ("Zimmerman"), Waste Management of Wisconsin, Inc. and its parent company, Waste Management of North America, Inc. (collectively, "Waste") seeking injunctive and monetary relief for purported violations of their civil rights as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. The factual basis of the suit is the installation of a sewer line, a portion of which runs through the Bowmans' property, and the recording of assessments related to that installation. The Bowmans asserted that the sewer line and the assessments were the product of a conspiracy among the defendants to interfere with their property rights by imposing illegal taxes on the Bowmans, polluting the Bowmans' property and taking the property for the private use and benefit of Waste. In addition to the federal counts, the Bowmans included pendent claims, presumably under Wisconsin tort law, alleging both trespass and an interference with prospective purchasers of their property. The district court dismissed all counts of the Bowmans' complaint as to all defendants pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. We have jurisdiction over the appeal of this final disposition pursuant to 28 U.S.C. § 1291. We affirm. We also deny defendants' request for sanctions under Fed.R.App.P. 38 and Circuit Rule 38.
 
 I.
 
 2
 First, we review the history of the defendants' association with each other because the Bowmans attempt to use this history to allege a conspiracy among the defendants. Franklin embarked on a series of civic improvements that resulted in their retention of Zimmerman as consulting engineer on the installation of Franklin's Central City Sewer (the "CCS"), which would ultimately connect with the Milwaukee Metropolitan Sewerage District (the "MMSD").
 
 
 3
 Waste formally requested that Franklin connect Waste's Metro Landfill, located in Franklin, to the CCS as an alternative method of transporting leachate produced in the landfill to the MMSD. Waste had been trucking the leachate to a MMSD treatment plant at relatively high cost. At roughly the same time, Waste, with Franklin's knowledge, retained Zimmerman as its project engineer to construct the force main necessary to connect to the CCS. Waste agreed to pay for modifications to the CCS necessary to accommodate Waste's use. Waste also agreed to construct the force main at its own expense and "dedicate ownership" of it to Franklin. Finally, Waste agreed to pay a connection fee of $600,000 and a continuing annual fee of $120,000 to Franklin's general operating fund, which would be used to reduce future property tax assessments.
 
 
 4
 The Bowmans' involvement with the CCS project began when William H. Bowman granted an easement to Franklin for the construction of a sanitary sewer through the Bowmans' property. The easement indenture states: "[n]o special assessments shall be levied against subject property for any sanitary sewer and appurtenances erected on said easement." R. 30 at Ex. A.
 
 
 5
 A report on special assessments prepared by Zimmerman included an assessment of $89,312.09 for the CCS in the public right of way abutting the Bowmans' property. R. 27 at Ex. B. The Bowmans appealed this $89,321.09 assessment to the Milwaukee County Circuit Court, which determined that there had been an error in computation and annulled the assessment. By resolution, Franklin reenacted the assessment, reducing it to $82,407.59. R. 1 at Ex. 12. A second $51,187.00 assessment for the CCS on the Bowman property was recorded by Franklin, but was never charged to the Bowmans pursuant to the term of the easement indenture. R. 1 at Ex. 6. Because it was never billed, the Bowmans refer to this second assessment as a "secret" assessment.
 
 
 6
 The Bowmans then filed a complaint in federal district court, the dismissal of which is the subject of this appeal. In response to the Bowmans' complaint, Waste moved to dismiss all claims against them for failure to state a claim on which relief can be granted under Fed.R.Civ.P. 12(b)(6). Both of the remaining defendants, Franklin and Zimmerman, answered the complaint. In addition to filing its answer, Zimmerman moved for summary judgment pursuant to Fed.R.Civ.P. 56 and for sanctions pursuant to Fed.R.Civ.P. 11 or, in the alternative, attorney's fees pursuant to 42 U.S.C. § 1988.
 
 
 7
 At a hearing on Waste's motion to dismiss, the district court granted the motion, dismissing with prejudice. On its own motion, the district court also dismissed the Bowmans' complaint with prejudice as to Franklin and Zimmerman. Finally, the district court denied Zimmerman's alternative motions for sanctions and attorney's fees. In this appeal, the Bowmans challenge the dismissals. Zimmerman has not challenged the denial of its motion for sanctions and attorney's fees by the lower court, although all defendants have requested that sanctions be imposed by this Court under Fed.R.App.P. 38 and Circuit Rule 38. Lastly, the Bowmans attempted to place additional evidence before us shortly before oral argument. Defendant Waste made a motion to strike this evidence, which we are hereby granting.[1]
 
 II.
 
 8
 We review dismissals under Rule 12(b)(6) de novo, Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir.1990), and we affirm such dismissals "only if the plaintiff has failed to allege any set of facts upon which relief may be granted." Yeksigian v. Nappi, 900 F.2d 101, 102 (7th Cir.1990). In undertaking such a review, we take as true all well-pleaded factual allegations and all reasonable inferences which may be drawn from those factual allegations. Leahy v. Board of Trustees of Community College District No. 508, 912 F.2d 917 (7th Cir.1990). Mindful of these standards, we address each legal basis for federal relief asserted by the Bowmans separately.
 
 A. Section 1983
 
 9
 It appears from their pro se pleadings that the Bowmans have alleged various violations of their property rights, presumably under the Fifth and Fourteenth Amendments, which they claim are actionable under 42 U.S.C. § 1983.[2] To state a claim under § 1983, the Bowmans must allege: (1) that they were deprived of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). All of the Bowmans' claims suffer from fatal weaknesses under one of the above prongs; many fail under both prongs.
 
 
 10
 Examining first the state action requirement of a § 1983 claim, we note that Waste and Zimmerman are private parties, not state actors. As such they may be subject to liability under § 1983 only if they wilfully participate in a conspiracy with the state or one of its agents. Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1352 (7th Cir.1985). A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided. Leahy, 912 F.2d at 922. The facts that the Bowmans do provide are insufficient to establish a conspiracy at all, much less a conspiracy that aims to deprive the Bowmans of their constitutional rights.
 
 
 11
 For example, Waste's agreement with Franklin to connect to the CCS did not have any impact on the actions Franklin took with regard to the Bowmans. It did not alter the route that the sewer was to take through the Bowmans' property or the extent of the easement. Franklin's sole accommodation of Waste was the provision of an additional lining, which was done entirely at Waste's expense, thus having no effect on the assessments against the Bowmans' property. Similarly, Franklin's relationship with Zimmerman did not affect its actions toward the Bowmans, despite the fact that Zimmerman did much of the design work for the sewer and prepared the reports that Franklin used in determining the amount of the assessments. The mere fact that Zimmerman acted as consulting engineers on this project is insufficient to establish state action as "[a]cts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell-Baker v. Kohn, 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982). Therefore, Waste and Zimmerman are not proper § 1983 defendants.
 
 
 12
 Franklin acted pursuant to Wisconsin Statute § 66.60 in assessing the Bowmans for the sewer. Accepting as true the allegation that this assessment qualifies as state action to state a claim under § 1983, the Bowmans must additionally allege that defendants' conduct deprived them of a right secured by the Constitution or laws of the United States. Gomez, 446 U.S. at 640, 100 S.Ct. at 1923. The Bowmans conclude in their complaint that their property rights have been violated, presumably under the Fifth and Fourteenth Amendments, but they do not allege how this has occurred. The specific conclusions that we can glean from the Bowmans' complaint are that the defendants have interfered with the Bowmans' property rights by imposing illegal taxes, polluting their property and taking the property for the private use and benefit of Waste, but none of these conclusions are supported by facts that make them cognizable Constitutional claims.
 
 
 13
 First, regarding the illegality of the tax assessments, the Bowmans do not allege that the taxes were imposed either in a discriminatory manner or contrary to the procedures provided by Wisconsin law. Thus, the Bowmans cannot state a § 1983 claim arising from these facts under the equal protection or the due process clauses of the U.S. Constitution.[3] See Kasper v. Larson, 372 F.Supp. 881 (E.D.Wis.1974). Second, the alleged pollution of the Bowmans' property is speculative at present. The Bowmans have alleged no actual injury. As such, this cannot be the source of a ripe claim for damages under § 1983. Finally, the Bowmans' contention that their property was taken through a conspiracy for the private use and benefit of Waste is contrary to the facts contained in the documents attached to the Bowmans' complaint. Neither the use of their land nor the amount of their assessments has been altered by Waste's involvement, and Waste has and will continue to pay for their use of the CCS. For these reasons, none of the Bowmans' allegations make out a claim under 42 U.S.C. § 1983.
 
 B. Section 1985
 
 14
 The Bowmans also attempt to state a claim under 42 U.S.C. § 1985. Though they do not specify which subsection is applicable, only subsection (3) is at all related to the Bowmans' allegations.[4] To state a claim under § 1985(3), a complaint must allege:
 
 
 15
 (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.
 
 
 16
 United Brotherhood of Carpenters and Joiners, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3355-56, 77 L.Ed.2d 1049 (1983), citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971). The Griffin Court specifically stated that the second element required "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," though it did not decide "whether a conspiracy motivated by invidiously discriminatory intent other than racial bias would be actionable" under § 1985(3). 403 U.S. at 102 & n. 9, 91 S.Ct. at 1798 & n. 9.
 
 
 17
 In order to assert the requisite animus, plaintiffs must be able to identify a class with common characteristics that raises the inference that they might be protected under § 1985(3). The Bowmans allege that they are part of a "trunk sewer class," but they do not allege that this class shares any common racial or other class-based characteristics.[5] The most that the Bowmans could assert is that they are linked to the remainder of the class by ownership of land in the same geographic area. However, § 1985(3) does not reach bias based on economic status.[6] Scott, 463 U.S. at 837-38, 103 S.Ct. at 3360-61. Even if the defendants' actions against the Bowmans could somehow be viewed as political, " § 1985(3) does not reach nonracial political conspiracies." Grimes v. Smith, 776 F.2d 1359, 1366 (7th Cir.1985). Therefore, because the Bowmans have failed to allege racially-motivated discriminatory animus behind defendants' conduct, their § 1985(3) claim must be dismissed.
 
 C. State Claims
 
 18
 The Bowmans alleged two state claims in their complaint: (1) that the installation of the sewer and the flow of Waste's leachate through it amounts to an ongoing trespass on their property and (2) that defendants' actions have caused prospective purchasers to lose interest in the property. Generally, when all the federal claims are dismissed before trial, the district court should relinquish jurisdiction over any pendent state claims as well. United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Instead of relinquishing jurisdiction by dismissing without prejudice, however, Judge Stadtmueller made a determination on the merits by dismissing both the federal and state claims with prejudice. This action represents a recognized exception to the general rule stated above: "[I]f it is absolutely clear that the pendent claim[s] can be decided in only one way, the district judge can and should decide [them], to save the time of the state court." Martin-Trigona v. Champion Federal Sav. & Loan Ass'n, 892 F.2d 575, 578 (7th Cir.1989).
 
 
 19
 Martin-Trigona indicates that we review such a determination under an "abuse of discretion" standard. Id. Judge Stadtmueller did not abuse his discretion by finding that the Bowmans' pendent state claims could be decided in only one way, because they are without merit. First, the Bowmans' easement indenture grants a temporary easement for the installation of the sewer. R. 30 at Ex. A. Second, the Bowmans cite no authority for the untenable proposition that wastes flowing through a sewer under a person's property constitutes a trespass. Finally, we cannot identify any known claim for relief under Wisconsin law that will support the Bowmans' interference claim. For these reasons, we find that Judge Stadtmueller was correct to dismiss the Bowmans' state claims with prejudice.
 
 D. Sanctions
 
 20
 The defendants have requested that sanctions be entered against the Bowmans under Fed.R.App.P. 38 and Circuit Rule 38. To award Rule 38 sanctions, we must determine that (1) the appeal is frivolous and (2) sanctions are appropriate. A-Abart Elec. Supply Inc. v. Emerson Elec. Co., 956 F.2d 1399, 1406 (7th Cir.1992). Though the question of whether this appeal is frivolous is a very close one, even taking note of William Bowman's pro se status, we do not find that sanctions are appropriate in this case. In making the determination of whether sanctions are appropriate, "[t]ypically the courts have looked for some indication of the appellant's bad faith suggesting that the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy." Reid v. United States, 715 F.2d 1148, 1155 (7th Cir.1983). The Bowmans have not displayed bad faith in this appeal, but rather have made a serious, though unpersuasive, attempt to address legal and factual errors that they believed the district court made, in contrast to pro se appellants who have been sanctioned in the past. See, e.g., Reis v. Morrison, 807 F.2d 112, 113 (7th Cir.1986); Bacon v. American Federation of State, etc., # 13, 795 F.2d 33, 35 (7th Cir.1986). For this reason, we deny the request for the sanctions under Fed.R.App.P. 38 and Circuit Rule 38.
 
 III.
 
 21
 For the foregoing reasons, the judgment of the district court dismissing the Bowmans' claims with prejudice as to all defendants is AFFIRMED and the MOTION FOR SANCTIONS is DENIED.
 
 
 
 [1]
 By letter pursuant to Fed.R.App.P. 28(j) and Circuit Rule 28(j), the Bowmans submitted two reports, one from the District Attorney of San Diego, California and one from the Sheriff's Department of Ventura County, California. These documents were never presented to the district court. Waste filed a motion to strike these documents. By order of this Court, the submission and subsequent motion were submitted to the merits panel for determination. Fed.R.App.P. 28(j) and Circuit Rule 28(j) deal only with citation of supplemental authority. Since these reports constitute additional evidence and not authority, they are not properly submitted under these rules. See Trans-Sterling, Inc. v. Bible, 804 F.2d 525, 528 (9th Cir.1986). Therefore, we grant the motion to strike
 
 
 [2]
 Section 1983 imposes civil liability only upon persons who "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983
 
 
 [3]
 In addition, though the district court did not rely on it, the Tax Injunction Act limits the power of the district court to restrain state officers from collecting taxes where an adequate remedy is afforded the taxpayer under state law. 28 U.S.C. § 1341. Such remedies exist in this case. In fact, the Bowmans made use of these remedies to challenge the $89,312.09 assessment in a Wisconsin state court, which annulled the assessment as improperly calculated
 Because the "secret" assessment has never been billed, no ripe claim can be made relating to it. However, because of the cumbersome way that Franklin recorded the assessment, it could amount to a lien on the property, impairing marketability. As pointed out in oral argument, the proper method for dealing with that potential problem would be a quiet title action. Because the Bowmans did not assert this lien theory anywhere in their complaint, it is not directly before us in this appeal.
 
 
 [4]
 Subsection (1) is inappropriate in this case because it applies only to conspiracies to prevent federal officers from performing their duties. No failure to carry out duties on the part of a federal officer is alleged by the Bowmans. Subsection (2) is similarly inappropriate because it applies only to conspiracies to obstruct justice by intimidating a party, witness or juror. The Bowmans allege no such intimidation. Therefore, subsection (3) remains as the most likely basis for the Bowmans' claim because it provides that damages may be recovered by those injured by a conspiracy to deprive persons of equal protection or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3)
 
 
 [5]
 Their situation bears some resemblance to that of Askew v. Bloemker in which "status as a 'class' of victims depends entirely upon the defendants' actions, and it is not possible for defendants to have conspired to discriminate against a class that did not even exist until after they had acted." 548 F.2d 673, 678 (7th Cir.1976)
 
 
 [6]
 The Scott Court, concerned that "[s]uch a construction would extend § 1985(3) into the economic life of the country in a way that we doubt that the 1871 Congress would have intended ..." refused to "construe § 1985(3) to reach conspiracies motivated by economic or commercial animus," in that case activity by a union against a company that had hired non-union workers. Id., 463 U.S. at 837-38, 103 S.Ct. at 3360-61